## MUNSON v. PLUMMER.

PAYMENT: EVIDENCE CONSIDERED.

*Appeal from Buchanan Circuit Court.*

THURSDAY, OCTOBER 21.

ACTION to recover upon three promissory notes of $500 each, and to foreclose a title bond. The defendants pleaded payment. There was a decree for plaintiff for $1,810.30 and costs, and a special execution was ordered against the property. The defendants appeal.

*John J. Ney,* for appellants.

*C. E. Ransier* and *Lake & Harmon,* for appellee.

ADAMS, CH. J.—In July, 1872, James Jamison, the plaintiff's intestate, sold to the defendant, E. M. Plummer, a certain house and lot in Independence, Iowa, for which the defendants executed their four promissory notes, one for three hundred dollars, and three for five hundred dollars each. The note for three hundred dollars has been paid, and no claim is made thereon. A payment of five hundred and thirty-three dollars and thirty cents was also made upon one of the notes for five hundred dollars. The plaintiff claims that these are all the payments that have been made. The defendants claim that other payments have been made, and that the notes are nearly, if not quite, discharged. The court found that no payments had been made except those above set out as not disputed, and rendered a decree accordingly.

The notes are in the hands of the plaintiff, and are, *prima facie,* unpaid, except so far as payments have been indorsed thereon. Upon the notes being introduced in evidence, the burden was cast upon the defendants.

To prove the alleged payments the defendants introduced as a witness their

son Carrol Plummer, who was at the time of the alleged payments about sixteen years old. He testified in regard to the payments, and to giving direction in regard to their application:

That money was paid by Carrol Plummer to Jamison, and in the amounts testified to, is, as we understand, not seriously contested. But it appears that there was an open account between Jamison and J. W. Plummer; that the money paid by Carrol was the money of J. W. Plummer, and the plaintiff contends that the money paid was applied to J. W. Plummer's credit upon account.

It is certain that the payments were not indorsed upon the notes, and the fact that the defendants were contented to allow the notes to remain outstanding with the payments unindorsed thereon, leads us to think that, with the exception of one payment, it was not understood by Jamison that they were to be indorsed, but were to be applied elsewhere.

The evidence in regard to one payment is exceptional. Carrol Plummer testifies, in substance, that on the first of October, 1873, he paid Jamison $500, with directions that it be applied upon the house, and that Jamison assented to such application. He further testifies that he made the payment in one bill, and remembers that Jamison asked him where he got such big money. The testimony of one Begun was introduced, who was at the time the law partner of Jamison. He says he remembers that in the fall of 1873 he saw Carrol Plummer pay Jamison $500 upon the house, and remembers that the payment was made in a five hundred dollar bill. He says that he remembers Jamison asked Carrol where he made a raise of such a bill, or where he found such big money; that he then asked Jamison to allow him to take the bill, and he took it and looked at it, and that other persons in the office got up and looked at it.

There is nothing, we think, in the record to justify us in discarding Begun's testimony. It is true that Mrs. Plummer does not recollect distinctly about the bill, and it appears that she must have given it to Carrol if it was paid at all; but her want of recollection, and some confusion which she manifests upon the subject, do not overcome, in our judgment, Begun's testimony, nor tend in any great degree to impair its credibility.

We believe not only that this payment was made, but that it was received by Jamison as made upon the house. It was not sufficient to pay any one note with interest, and the defendants might have rested in the belief that it was properly indorsed. It is not so probable that they rested in the belief that the other payments were indorsed, because if they had been they would have lacked but a few dollars, at most, of being sufficient to enable them to take up all their notes, and obtain a deed to their house.

In our opinion the decree should be reduced by such amount as would give the defendants the benefit of the payment of $500, as made October 1, 1873, and that the decree should in all other respects stand.

MODIFIED AND AFFIRMED.